# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**TONY KELSEY**                                                                      **PLAINTIFF**
**ADC #164630**

**v.**                              **Case No: 4:22-cv-00064 JM-PSH**

**MARY COBB,** *et al.*                                                          **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Tony Kelsey, an inmate at the Arkansas Division of Correction's (ADC) Randall Williams Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on January 25, 2022, raising Eighth Amendment failure-to-protect claims (Doc. No. 1). Kelsey sues Major Mary Cobbs, ADC Director Dexter Payne, Deputy Warden John W. Herrington, Sr., Class/Review Officer Tabatha Thomas, and Superintendent Gary Musselwhite.[1] *Third Amended Complaint* (Doc. No. 99). The Court previously determined that Kelsey exhausted his administrative remedies before filing this case. *See* Doc. No. 137.

Kelsey's motion for summary judgment on liability, brief-in-support, and statement of uncontroverted facts (Doc. No. 88, 90-91) is now before the Court. Kelsey seeks summary judgment as to the liability of defendants Cobbs, Herrington, Thomas, and Musselwhite (the "Liability Defendants").[2] The Liability Defendants filed a response and incorporated brief, addendum, response to Kelsey's statement of uncontroverted facts, and a statement of facts in

---

[1] Kelsey previously dismissed his claims against Medical Services Manager Ramona Huff. *See* Doc. Nos. 60-61.

[2] Kelsey does not seek summary judgment against defendant Payne, who was sued in his official capacity for injunctive relief only. *See* Doc. No. 99 at ¶ 24.

dispute (Doc. Nos. 147-150).  Kelsey filed a reply (Doc. No. 155).  Kelsey's motion for summary judgment is denied for the reasons explained below.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).

## III.  Analysis

Kelsey claims that Cobbs, Herrington, Thomas, and Musselwhite violated his Eighth Amendment right to be free from cruel and unusual punishment by placing Buril Harvey, whom they knew to be a dangerous inmate with a history of attacking other inmates, in general population in October of 2020, where he then attacked Kelsey.

An inmate has a constitutional right to be free from attacks by other inmates.  *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994).  To succeed on a failure-to-protect claim, an inmate must show that there was a substantial risk of serious harm to him and that defendants were deliberately indifferent to that risk.  *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008).  Specifically,

> "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).  To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016).

As plaintiff, Kelsey bears the burden of proof, and therefore faces a challenge in proving his case on summary judgment.  *See Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998) ("Summary judgments in favor of parties who have the burden of proof are rare, and rightly so."). Having carefully reviewed the pleadings and evidence submitted, the Court finds he has not done so -- genuine issues of material fact remain for trial, as explained below.

Kelsey relies on the following material facts to support his motion for summary judgment on liability:

> Defendants acknowledge that between April 7, 2020, and August 24, 2020, Harvey attacked C.M., M.G., R.R., and A.G. and threatened to stab a fifth inmate. Defendants concede that, on September 24, 2020, they met in a group with Harvey to determine whether they should return him to the barracks or transfer him to a more secure prison and they decided that they should transfer him to a more secure prison. This decision was based on Harvey's multiple assaults on other prisoners and his Custody Score of 46, which was 20 points higher than allowed at Pine Bluff Unit. And Defendants agree that, one week later, on October 1, 2020, they again met with Harvey and again decided that, due to his disciplinary history and Custody Score, they should transfer him "to a Unit [that] is better equipped to House an inmate with his custody status." (Exh. Y, 10/1/2020 Classification Committee Meeting Notes.) These factors indicated that there was a substantial risk that Harvey would assault another prisoner. As a result of their decision at these meetings, Defendants took steps to transfer Harvey to a more secure prison but never completed the process. Instead, at some point, they simply gave up and decided that they would disregard the substantial risk that they recognized Harvey posed to the other prisoners and put him back in the barracks even though they knew that he did not belong there.

Doc. No. 90 at 21.  The Liability Defendants dispute several of these facts and in some cases, dispute Kelsey's characterization of these facts.

First, while they do not dispute that Kelsey received four disciplinaries for assaulting other inmates between April and August of 2020, they provide additional context for these disciplinaries, claiming that each assault was not necessarily random or unprovoked. *See* Doc. No. 149 at ¶ 27 (assault on C.M. occurred after C.M. threatened to force Harvey to suck his penis); ¶ 35 (Harvey testified he was paid $20 to hit M.G. with soap); ¶ 49 (no record relating to provocation and no evidence Harvey attempted to slash A.G.'s face, but instead swung a weapon at him).   And while the Liability Defendants admit that Harvey received a disciplinary for threatening to stab an inmate in May of 2020, they explain that Harvey informed mental health he was tired of others messing with him and he was about to stab someone. *Id.* at ¶¶ 30-31.

Second, regarding the September 24, 2020 classification meeting, the Liability Defendants dispute that they determined that Harvey did not belong at the Pine Bluff Unit due to his high custody level and should be transferred to another unit.   Rather, they point to the classification committee notes, which state, "Inmate will continue in RH/ Punitive, to complete punitive time. Inmate will possible (sic) be transferring from Unit due to multiple disciplinary for assault and Custody: C4 Maximum (46) Institutional Custody Level for Pine Bluff Unit is (26)."  Doc. No. 149 at ¶ 52 (citing Doc. No. 88-23 at 2); *id.* at ¶ 12 (citing deposition testimony of Tabatha Thomas explaining that inmates with high custody levels may be housed at the Pine Bluff Unit despite the custody classification guidelines).  The Liability Defendants dispute that they unanimously agreed to transfer Harvey; they maintain they agreed they would attempt to transfer him if possible. *Id.* at ¶ 53.

Third, while the Liability Defendants do not dispute that they agreed again on October 1, 2020, to attempt to transfer Harvey "to a Unit the [sic] is better equipped to House an Inmate with his custody status," they dispute that he "did not belong at the Pine Bluff Unit" and "needed to be

transferred." Doc. No. 149 at ¶¶ 57-58. Instead, they maintain, and their notes reflect, that they were working towards transferring Harvey.

Finally, and most importantly, the Liability Defendants dispute that they simply gave up on transferring Harvey and decided to put him back into general population despite his disciplinary history and custody score. Kelsey insists that Musselwhite made a decision to not transfer Harvey, and Musselwhite vehemently disputes that allegation. Doc. No. 149 at ¶¶ 60-61 (citing Musselwhite's deposition testimony regarding his attempts to transfer Harvey). Kelsey also asserts that Herrington and Thomas released Harvey back into population after he finished his time in punitive housing[3] because Musselwhite denied a transfer. The Liability Defendants state they had no choice because the transfer had not come through yet and because transfers were limited at that time due to the COVID-19 pandemic. *Id.* at ¶ 62. Herrington also explained that once an inmate completes a punitive sentence, he is to be released from restrictive housing. *Id.* at ¶ 71 (citing Doc. No. 148-3, at 148:1-6; 152:15-22.) Thomas also testified that Harvey was positive for COVID-19 at that time anyway and therefore could not be moved. *Id.* at ¶ 64. Additionally, Kelsey asserts that Thomas wanted to move Harvey because she knew he would continue to assault other prisoners, but she actually testified that she believed he would "cause problems" that would keep him restricted to punitive housing. *Id.* at ¶ 63.

It is undisputed that Cobbs, Herrington, and Thomas asked Harvey if he would behave himself if he were returned to general population. Doc. No. 149 at ¶ 66 (citing Thomas deposition testimony, Doc. No. 88-2 at T. p. 103). However, the parties vigorously dispute his response. Relying on the testimony of Harvey and an alleged witness, Caleb Bailey, Kelsey maintains that Harvey told these defendants he would stab someone else if he was released to general population.

---

[3] Harvey was in punitive housing for a period of time following disciplinary convictions related to his previous assaults.

Doc. No. 91 at ¶¶ 67-69.  The Liability Defendants object to the admissibility of Bailey's testimony, but even if it is admissible, Thomas, Herrington, and Cobb all deny that Harvey made any such statement.[4]  Doc.  No. 149 at 30-33 (responding to ¶¶ 68-69 and citing these parties' deposition testimony).  Furthermore, Herrington and Thomas maintain that Harvey said he would behave himself if released to general population.  *Id.* at ¶¶ 71-73 (citing Doc. No. 148-3 at T. p. 153:2-7 and Doc. No. 88-2 at T. p. 103-104).

In sum, Harvey's high custody score and history of disciplinaries for assaulting other inmates in the months prior to the October 2020 attack on Kelsey, do not establish as a matter of law that the Liability Defendants knew that he posed a substantial risk of harm to the inmates in general population and failed to take action with deliberate indifference to that risk.  Factual disputes exist concerning the nature of the previous attacks, whether Harvey warned some of the Liability Defendants that he would attack another inmate if released to general population, whether Harvey should have been housed at the Pine Bluff Unit at all, whether Musselwhite made a unilateral decision to not transfer Harvey, what efforts were made to transfer Harvey, and what effect COVID and Harvey's diagnosis of COVID had on efforts to transfer Harvey.  These genuine issues of material fact should be decided by a jury.

## VI.  Conclusion

Kelsey's motion for summary judgment on liability (Doc. No. 88) is DENIED because genuine issues of material fact remain.

IT IS SO ORDERED this 9th day of July, 2024.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Thomas admits that Harvey told her he would stab someone if he was not transferred to another unit on October 24, 2020, *after* he attacked Kelsey.  *See* Doc. No. 149 at ¶ 67.