IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ELIZABETH KELSEY,**                                                                   **PLAINTIFF**
*as the Administrator of the Estate of*
*Tony Kelsey, deceased*

v.                                        Case No: 4:22-cv-00064 JM-PSH

**MARY COBBS,** *et al.*                                                                **DEFENDANTS**

<u>**MEMORANDUM AND ORDER**</u>

### I.  Introduction

Plaintiff Tony Kelsey filed a complaint pursuant to 42 U.S.C. § 1983 on January 25, 2022, raising Eighth Amendment failure-to-protect claims (Doc. No. 1).  Kelsey sued Major Mary Cobbs, ADC Director Dexter Payne, Deputy Warden John W. Herrington, Sr., Class/Review Officer Tabatha Thomas, and Superintendent Gary Musselwhite (the "Defendants").[1]  *Third Amended Complaint* (Doc. No. 99).  The Court previously determined that Kelsey exhausted his administrative remedies before filing this case.  *See Order* (Doc. No. 137).  Kelsey died on November 28, 2024.  *Suggestion of Death* (Doc. No. 171).  His mother, Elizabeth Kelsey, was subsequently appointed administrator of his estate and substituted as plaintiff in this case (and is hereinafter referred to as "Plaintiff").  *Rule 25 Motion* (Doc. No. 172); *Order* (Doc. No. 175).

The Defendants' motion for summary judgment, brief-in-support, and statement of uncontroverted facts (Doc. No. 163-165) is before the Court.  Plaintiff filed a response and incorporated brief, a response to the Defendants' statement of facts, and a statement of facts in

---

[1] Kelsey previously dismissed his claims against Medical Services Manager Ramona Huff.  *See* Doc. Nos. 60-61.

dispute (Doc. Nos. 166-168).  The Defendants filed a reply (Doc. No. 169).[2]  The Defendants' motion for summary judgment is denied for the reasons explained below.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).

## III.  Analysis

Kelsey claimed that Cobbs, Herrington, Thomas, and Musselwhite violated his Eighth Amendment right to be free from cruel and unusual punishment by placing Buril Harvey, whom they knew to be a dangerous inmate with a history of attacking other inmates, in general population in October of 2020, where he then attacked Kelsey.  Doc. No. 99.  Kelsey sued Cobbs, Herrington,

---

[2] Several pleadings have been filed concerning the Eighth Circuit Court of Appeals' anticipated decision in *S.A.A. v. Geisler* which was scheduled for oral argument and heard on October 24, 2024.  *See* Doc. Nos. 170, 176-177.  Since that case has been decided, Defendants' argument that Kelsey sued them solely in their official capacities is now moot.  *See S.A.A. v. Geisler,* No. 23-3119, 2025 WL 426999, at *2 (8th Cir. Feb. 7, 2025) (overturning "clear statement rule" regarding capacity in which defendants are sued).

Thomas, and Musselwhite for money damages. *Id.* at ¶¶ 20-23. He sued Defendant Dexter Payne in his official capacity only seeking injunctive relief. *Id.* at ¶¶ 3, 24; Doc. No. 166 at 15, ¶ 26.

### A. *Official Capacity Claims*

Because Kelsey is deceased, his claims for injunctive relief are now moot. *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions."). Accordingly, Plaintiff's claims against Defendant Dexter Payne for injunctive relief are hereby DISMISSED. The Clerk of Court is directed to terminate Payne as a defendant in this case.

### B. *Individual Capacity Claims*

Defendants Cobbs, Herrington, Thomas, and Musselwhite argue that they are entitled to qualified immunity with respect to Kelsey's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

It is clearly established that an inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). To succeed on a failure-to-protect claim, an inmate must show that there was a substantial risk of serious harm to him (or inmates in general) and that defendants were deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008). Specifically,

> "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016). For the purposes of failure-to-protect claims, "'it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk.'" *Hott v. Hennepin Cnty., Minnesota*, 260 F.3d 901, 906 (8th Cir. 2001) (quoting *Farmer,* 511 U.S. at 843) (other citations omitted). However, the Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). *See also Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010) (affirming summary judgment in favor of jail guard where inmate was attacked by surprise after reconciling with his attacker after a previous incident and having "recreated, dined, and resided together" with the other inmate for approximately two weeks without incident).

Having reviewed the pleadings and evidence presented and construing the facts in the light most favorable to Plaintiff, the Court finds that Defendants Cobbs, Herrington, Thomas, and Musselwhite are not entitled to qualified immunity because genuine issues of material fact remain

for trial, as explained below.

   1. <u>Surprise Attack</u>

Cobbs, Herrington, Thomas, and Musselwhite argue they are entitled to qualified immunity because Kelsey was attacked by surprise. Doc. No. 164 at 10. They argue that Kelsey and his attacker, Harvey, had no history with one another, and Harvey was not on Kelsey's enemy alert list. *See id.* at 12; Doc. No. 165 at ¶ 106; Doc. No. 167 at ¶111. These defendants acknowledge that Harvey was disciplined four times in the months leading up to the attack for either attacking or threatening to attack other inmates,[3] but argue that he was not sufficiently dangerous as to warrant segregation from other inmates, and that the defendants were not all necessarily aware of the specifics of his disciplinary history or underlying criminal conviction in any case. Doc. No. 164 at 11-12, 17-18.

As Plaintiff points out, evidence in the record calls these assertions into question. Classification Committee notes from a September 24, 2020 meeting show that Cobbs, Herrington, Thomas, and Musselwhite discussed Harvey's high custody score and his multiple disciplinaries for assault, stating "Inmate will continue in RH/Punitive, to complete punitive time. Inmate will possible be transferring from Unit due to multiple disciplinary for assault and custody: C4 Maximum (46) Institutional Custody Level for Pine Bluff is (26)." Doc. No. 166-14 at 2. On October 1, 2020, they met again, noting that Harvey would be reviewed again after he served his punitive sentence "due to his disciplinary history and Custody score." Doc. No. 166-16 at 2. They also noted that they were working on transferring him to a unit "better equipped" to house an

---

[3] Harvey attacked inmate C.M. on April 7, 2020; Harvey informed mental health staff that he was sick of folks messing with him and he was about to stab someone on May 6, 2020; Harvey used a laundry bag containing seven bars of soap to strike an inmate in the head/facial area on July 18, 2020; Harvey struck inmate R.R. with a sock filled with three bars of soap on July 26, 2020; and Harvey began to swing a weapon at an inmate on August 24, 2020. *See* Doc. No. 165 & 167 at ¶¶ 30-41.

inmate with his custody status. *Id.*

Plaintiff also provides evidence that Harvey told Cobbs, Herrington, Thomas, and Musselwhite that he would stab another inmate if he were put back in the barracks. Doc. No. 166 at 20; Doc. No. 168 at ¶¶ 11-13 (citing *Deposition of Bruil Harvey*, Doc. No. 166-4; *Deposition of Caleb Bailey,* Doc. No. 166-19; and *Sworn Statement of Caleb Bailey*, Doc. No. 166-20). The defendants deny this allegation and provide their own sworn testimony in support. *See* Doc. No. 165 at ¶¶ 84-87, 90, 95-96 (citing *Cobbs Deposition,* Doc. No. 148-1; *Thomas Deposition,* Doc. No. 148-2; *Herrington Deposition*, Doc. No. 148-3; *Musselwhite Deposition*, Doc. No. 148-4; and *Huff Deposition*, Doc. No. 148-7). They also maintain that Harvey told the committee he would not cause further problems before his release from punitive segregation. Doc. No. 164 at 20, 29 (citing *Thomas Deposition,* Doc. No. 88-2); Doc. No. 165 at ¶ 93 (citing *Herrington Deposition,* Doc. No. 148-3). Viewing this evidence in the light most favorable to Plaintiff, there is an inference that Cobbs, Herrington, Thomas, and Musselwhite knew Harvey presented a substantial risk to other inmates. As the Eighth Circuit stated in *Coleman v. Parkman,* defendants "rely heavily upon their own assertions that they had no subjective knowledge. The jury may believe appellants. But, courts cannot use Federal Rule of Civil Procedure 56 to resolve credibility issues, and the evidence supports a reasonable inference that appellants knew of the risk." 349 F.3d 534, 539 (8th Cir. 2003). Accordingly, whether or not Harvey warned Cobbs, Herrington, Thomas, and Musselwhite that he would stab an inmate if he were released into general population remains an issue for the jury to decide.

Additionally, the parties dispute the significance of a statement signed by Harvey after he attacked Kelsey, in which he stated:

> You[all] [must] ship me. This war between me and Dude Z stap (sic) ain't over with. Send me to [Tucker] max or [Randall L. Williams Correctional Facility]. This

> Unit ain't for me. I will do this every time I see him or other inmates. What's my custody status now?

Doc. No. 166-24. Harvey checked a box indicating that he had not previously talked to staff about this request. *Id.* Defendants insist that indicates he did not previously inform them of any threats to other inmates, whereas Plaintiff maintains that Harvey was simply stating he had not previously talked to anyone about his most recent threat to attack again if not moved. *See* Doc. No. 166 at 22-23. The Court agrees that the interpretation of Harvey's statement is a triable issue for the jury.

In sum, Cobbs, Herrington, Thomas, and Musselwhite have not proven at this juncture that Harvey attacked Kelsey by surprise, that Harvey did not pose a substantial risk of harm to all inmates at the Pine Bluff Unit due to his violent history and alleged threats to attack other inmates if released from segregation, or that they did not know about the risk he may have posed. Rather, factual disputes exist concerning these issues. *See also Memorandum and Order,* Doc. No. 162, at 6 (describing the same disputed issues of material fact in denying Plaintiff's motion for summary judgment as to liability).

2. COVID Restrictions on Transfers

Cobbs, Herrington, Thomas, and Musselwhite also argue that they are entitled to summary judgment because they could not transfer Harvey to another unit due to the COVID-19 pandemic ("COVID"). Doc. No. 164. They assert that there is no clearly established law concerning how prison officials should handle transferring inmates during COVID. *Id.* at 32. This argument is a red herring. If Harvey posed a substantial risk of harm to all inmates due to his violent history and alleged threats to stab someone if released from segregation, the defendants had a duty to protect other inmates from him whether or not they were able to transfer him to another unit during COVID. Plaintiff submitted the declaration of Kelsey, who stated that 3 barracks at the Pine Bluff Unit had single-man cells in 2020 that were not used for restrictive housing, and that he had been

placed there while not on restriction for a time. Doc. No. 166-22 at ¶¶ 2-3. Cobbs, Herrington, Thomas, and Musselwhite have not provided any evidence to explain why they had to release Harvey to general population once his punitive time was served; rather, they explain this is their routine practice and offer that there is no long-term restrictive housing at the Pine Bluff Unit. Doc. No. 165 at ¶¶ 15, 24. But they have not explained why they could not house Harvey in a one-man cell pending the transfer they had requested, but was delayed due to COVID. In short, if Defendants knew Harvey posed a danger to other inmates (which remains disputed), they were required to find an alternative that protected other inmates. *See e.g., Coleman v. Parkman*, 349 F.3d at 538–39 ("Once an official knows of a risk, the Eighth Amendment requires the official take reasonable measures to abate the risk.") (citing *Olson v. Bloomberg,* 339 F.3d 730, 735 (8th Cir. 2003)).

## VI. Conclusion

Kelsey's claims against Defendant Dexter Payne for injunctive relief are DISMISSED as MOOT, and the Clerk of Court is directed to terminate Payne as a defendant in this case. The Defendants' motion for summary judgment (Doc. No. 163) is DENIED because genuine issues of material fact are disputed. This matter will be set for jury trial by subsequent notice.

IT IS SO ORDERED this 4th day of March, 2025.

_____
UNITED STATES DISTRICT JUDGE